# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

|  |  |
|---|---|
| **LYNK LABS, INC.,**<br>            **Plaintiff,**<br><br>   *v.*<br><br>**HOME DEPOT USA, INC., THE HOME DEPOT INC., and HOME DEPOT PRODUCT AUTHORITY, LLC,**<br>            **Defendants.** | **6:21-cv-00097-ADA** |

## MEMORANDUM OPINION & ORDER GRANTING DEFENDANT'S OPPOSED MOTION TO TRANSFER VENUE [ECF No. 24]

Came on for consideration this date is the Motion to Transfer Venue filed by Defendants Home Depot USA, Inc., The Home Depot Inc., and Home Depot Product Authority, LLC (collectively, "Home Depot") on May 27, 2021. ECF No. 24 (the "Motion"). Plaintiff Lynk Labs, Inc. ("Lynk") filed an opposition on November 19, 2021, ECF No. 45, to which Home Depot responded on December 3, 2021, ECF No. 50. Lynk filed a sur-reply on December 7, 2021. ECF Nos. 51, 52. After careful consideration of the Motion, the Parties' briefs, and the applicable law, the Court **GRANTS** Home Depot's Motion to Transfer Venue.

## I. BACKGROUND

Lynk sued Home Depot in this Court on January 29, 2021, alleging that Home Depot sells lighting products (the "Accused Products") that infringe Lynk's patents. ECF No. 1. Lynk is incorporated and based in Illinois. ECF No. 17 ¶ 2. Home Depot USA, Inc. and The Home Depot Inc. are organized in Delaware and based in Georgia. ECF No. 19 at 3–4. Home Depot Product Authority, LLC is organized and based in Georgia. *Id.*

On May 27, 2021, Home Depot moved to transfer this Action to the Northern District of Georgia ("NDGA"), where Home Depot's headquarters ("HQ") is located, under 28 U.S.C.

§ 1404(a). ECF No. 24. Lynk has opposed, noting Home Depot's substantial presence and Lynk's customer base in Texas. ECF No. 45.

## II. LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Title 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the [transfer] destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law

2

that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id*. Courts evaluate these factors based on the situation that existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960). The weight the Court gives to each of these assorted convenience factors will necessarily vary from case to case. *See Burbank Int'l, Ltd. v. Gulf Consol. Int'l, Inc.*, 441 F. Supp. 819, 821 (N.D. Tex. 1977). A court should not deny transfer where "only the plaintiff's choice weighs in favor of denying transfer and where the case has no connection to the transferor forum and virtually all of the events and witnesses regarding the case . . . are in the transferee forum." *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013).

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). The burden that a movant must carry is not that the alternative venue is more convenient, but that it is *clearly* more convenient. *Volkswagen II*, 545 F.3d at 314 n.10. While "clearly more convenient" is not explicitly equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). Yet, the Federal Circuit has clarified that, for a court to hold that a factor favors transfer, the movant need not show that that factor *clearly* favors transfer. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

### III. ANALYSIS

#### A. Venue and Jurisdiction in the Transferor Forum

This Court finds, and Lynk does not contest, that this Action could have been brought in the NDGA.

B. **Private Interest Factors**

1. <u>Relative Ease of Access to Source of Proof</u>

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv, Inc. v. Apple Inc.*, No. 6:18-cv-00372-ADA, 2019 U.S. Dist. LEXIS 171102, at *5 (W.D. Tex. Sept. 10, 2019). This factor relates to the relative—not absolute—ease of access to non-witness evidence. *See In re Radmax*, 720 F.3d at 288; *In re Apple*, 979 F.3d at 1339. And "the movant need not show that all relevant documents are located in the transferee venue to support a conclusion that the location of relevant documents favors transfer." *In re Apple*, 979 F.3d at 1340. In *Radmax*, the Fifth Circuit held that, though the distance between two divisions was slight, because all the documents and physical evidence were in the transferor division, this factor favored transfer. 720 F.3d at 288.

The Fifth Circuit has held that, even in the context of electronic documents accessible anywhere on earth, this factor is not superfluous. *See Volkswagen II*, 545 F.3d at 316; *see also In re Dish Network L.L.C.*, No. 2021-182, 2021 U.S. App. LEXIS 31759, at *6 (Fed. Cir. Oct. 21, 2021). Though having characterized that holding as antiquated in the setting of a modern patent dispute, this Court will continue to analyze this factor with a focus on the location of: physical documents and other evidence; and the hardware storing the relevant electronic documents. *See, e.g.*, *Bluebonnet Internet Media Servs., LLC v. Pandora Media, LLC*, No. 6-20-CV-00731-ADA, 2021 U.S. Dist. LEXIS 137400, at *7 & n.1 (W.D. Tex. July 22, 2021). The Federal Circuit has also recently held that it is error not to consider: "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval." *In re Google LLC*, No. 2021-178, 2021 U.S. App. LEXIS 33789, at *7 (Fed. Cir. Nov. 15, 2021).

*Home Depot's Evidence*. Home Depot asserts that, as the accused infringer, it has the bulk of the relevant evidence, and that evidence is stored at its Atlanta HQ. ECF No. 24 at 7. A

declaration provided by Eric Snyder, Director of Quality Assurance at Home Depot Product Authority, LLC, states that financial documents and records regarding the design, development, marketing, and sale of the Accused Products are kept at Home Depot HQ. ECF No. 24-19 ¶¶ 1, 7–11. Mr. Snyder further states that Home Depot personnel "with information relevant to the design, development, marketing and sale of the Accused Products are based" at Home Depot HQ, where their relevant "hard copy and electronic documents" are maintained. ECF No. 24 at 7 (citing ECF No. 24-19 ¶¶ 1–11). He continues, "[n]o research, development or design work concerning the Accused Products" is or has taken place at Home Depot's Technology Center or the BlackLocus Innovation Lab, both in the WDTX. ECF No. 24-19 ¶ 9.



In addition, Lynk alleges that it is "highly likely" that "relevant documents" exist at Home Depot's Austin Technology Center and BlackLocus Innovation Lab. ECF No. 45 at 12.

As an initial matter, this factor is not neutral, as Lynk would have this Court believe, merely because relevant documents are most likely stored electronically and thus, could be easily accessed

from this District (or any district). The Fifth Circuit and the Federal Circuit have rejected this argument time and again, reaffirming that the question is *relative* ease of access, not absolute ease of access. *Volkswagen II*, 545 F.3d at 316; *In re Dish*, 2021 U.S. App. LEXIS 31759, at *6. And while the location of the servers storing the relevant documents is owed weight under this factor, the parties did not establish the location of Home Depot's cloud servers storing relevant documents.

The Court is satisfied that a significant amount of relevant evidence resides in the NDGA. Home Depot has presented evidence that relevant Home Depot custodians reside, *see infra* Section III.B.3, and relevant documents are maintained in the NDGA, tipping this factor toward transfer. *See In re Google*, 2021 U.S. App. LEXIS 33789, at *7. As explained in more detail below with reference to Home Depot's willing witnesses, though the Court agrees with Lynk that vendors dotted around the United States and Asia possess documents critical to the infringement inquiry, the Court is satisfied that personnel at Home Depot's HQ possess evidence relevant to *at least* some claimed features, damages, willfulness, and induced infringement.

The Court is also persuaded, however, that documents relevant to damages are located at Home Depot's BlackLocus Innovation Lab in this District at least because ███████████████ ███████████████████████████████████████████████████████████████ ███ It is less convinced that there are relevant documents at Home Depot's Austin Technology Center ("ATC"). ██████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████ As such, the Court has no evidence to suggest that the ATC maintains relevant evidence.

*Lynk's Evidence.* Lynk argues that its documents are "mostly electronic and are stored on Lynk's computers in Illinois." ECF No. 45 at 11. Home Depot further posits that Lynk documents may also be kept in the United Kingdom, where Robert Kottritsch, Lynk's Vice President of Business Development and a named inventor on six asserted patents, resides. ECF No. 24 at 8. Yet, since Lynk's evidence is not located near this District of the transferee forum, it does not affect this factor. *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014).

*Non-party Evidence.* The parties rely on evidence from an Atlanta-based Home Depot vendor, a Texas-based patent attorney, and Texas- and Georgia-based Lynk customers.

Edward Boyd provided a declaration attesting that New Bright Technology (Macao Commercial Offshore) Limited ("Bright"), a Home Depot vendor, "has sourced and supplied a significant number of [the] Accused Product to Home Depot." ECF No. 24-18 ¶ 2. ██████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ Mr. Boyd attested that, since 2011, he had helped develop some of the Accused Products and maintains hard copy and electronic documents "relevant to this issue" at his Atlanta office. ECF No. 24-18 ¶¶ 3–4.

The Court credits Mr. Boyd's attestation that he maintains document relevant to the development of some of the Accused Products in his Atlanta office. Lynk argues ██████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████



████████████████████████████████████████████ Even if they did,

because none of them is particularly close to this District or the transferee district, their evidence

is accorded little to no weight under this factor. *See In re Toyota*, 747 F.3d at 1340.

Lynk identifies two "early customers of Lynk's lighting products" based in this District:

the San Antonio-based ████████████ and the Reagan-based ████████████████

ECF No. 45 (citing ECF No. 45-1 ¶¶ 7–10 ████████████. Home Depot identifies

three Lynk customers in the NDGA: █████████████████████ ECF No. 50

at 4 & n.10.

The Court is not persuaded that ████ has any evidence relevant to this case. As Home Depot

has noted, ████ has purchased only one product from Lynk: a ███████████████e that

*no other Lynk* customer has purchased, has no apparent relevance to the accused products or

patents-in-suit, is not identified on Lynk's list of products allegedly covered by the patents-in-

suit." *Id.* at 1–2. Lynk's omission of these facts inspires little confidence that the other customer

Lynk identified, ████████████ purchased products practicing the asserted patents. For similar

reasons, the Court is not yet prepared to accord great weight to Lynk's customers in the NDGA

without some evidence that they have ever purchased products practicing the asserted patents. *See*

*id.* at 4 & n.10. Home Depot has not alleged that ████████ or ████████ manufacture

8

or purchase products practicing the asserted patents. *See* ECF No. 52 at 3. Further, Lynk vigorously disputes Home Depot's representation that ███████████████████████████████████ ██████████████████████████████████████████████████████████████████████████████ ██████████████████████ The Court does not have sufficient information before it to resolve this dispute between the Parties and, therefore, is not inclined to find that ████████ possesses relevant evidence.

Lynk also identifies Dallas-based Jamie Raju as the attorney who prosecuted some of the asserted patents and argues she may possess relevant evidence. ECF No. 45 at 10. But Home Depot asserts that, "unlike four other attorneys," Ms. Raju appears "nowhere in the over 4600 page voluminous file histories of the patents-in-suit." ECF No. 50 at 2. The Court refuses to deem Ms. Raju a potential source of proof based only on attorney argument that she participated in prosecution, especially given Home Depot's representation that her name does not appear anywhere in the prosecution history.

*Conclusion.* In patent cases, most of the relevant documents come from the accused infringer. *See In re Nintendo Co.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009); *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). The Court is not persuaded that BlackLocus Innovation Lab—the only credible source of proof in this district—maintains more relevant evidence than Home Depot and Mr. Boyd in the NDGA. Accordingly, the Court finds that this factor favors transfer.

### 2. Availability of Compulsory Process

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015

WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order. *Fintiv*, 2019 U.S. Dist. LEXIS 171102, at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014).

The Federal Circuit has held that, under Fifth Circuit law, "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018); *see also In re Hulu*, 2021 U.S. App. LEXIS 22723, at *10 ("[W]here . . . the movant has identified multiple third-party witnesses and shown that they are overwhelmingly located within the subpoena power of only the transferee venue, this factor favors transfer even without a showing of unwillingness for each witness."). Further, this Court cannot "discount" third-party "entities" having pertinent information in the transferee venue "just because individual employees were not identified." *In re Apple Inc.*, No. 2021-181, 2021 U.S. App. LEXIS 33788, at *8 (Fed. Cir. Nov. 15, 2021) (quoting *In re HP Inc.*, 826 F. App'x 899, 903 (Fed. Cir. 2020)).

*Home Depot's Non-party Witnesses*. Home Depot argues that employees of "nonparty vendors that source the Accused Products and in many circumstances collaborated with Home Depot regarding the design, development, and sale of the Accused Products reside within the NDGA." ECF No. 24 at 11. For that proposition, Home Depot cites Mr. Snyder's attestation that Home Depot collaborated with ETi Solid State Lighting, Inc. "on the conception, design and/or development" of some Accused Products. ECF No. 24-19 ¶ 5. ████████████████████████

████████████████████████████████████████████████

████████████ According to Mr. Snyder, at least one Atlanta-based ETi employee, Kerby Siglin,

was involved in those sessions. ECF No. 45-3 at 149:14–150:2; ECF No. 24-19 ¶ 5. The Court finds that Atlanta-based Mr. Siglin is within the subpoena power of the NDGA and, having worked with Home Depot in developing some of the Accused Products, likely possesses knowledge relevant to this Action.

Home Depot also cites to the LinkedIn profile of Michael Ouellette, Vice President of Sales at Buckingham Industrial Corporation, in Kennesaw, Georgia, not fifty miles north of Atlanta. ECF No. 24-17. According to Home Depot's counsel, Buckingham supplies Home Depot with Accused Products. ECF No. 24-1 ¶ 17. Home Depot also, purportedly, has suppliers further afield in, for example, China; Home Depot suggests that these Chinese entities may employ people possessing technical knowledge of the Accused Products. ECF No. 24 at 10.[1] Home Depot also relies on Mr. Boyd's declaration that he helped develop some of the Accused Products. ECF No. 24-18 ¶¶ 1–6.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████ And because this Court does not have the authority to require Home Depot's Chinese vendors' live testimony, they are irrelevant to this factor.

But the Court is content to presume that Mr. Ouellette has relevant knowledge. Mr. Ouellette's LinkedIn profile states that he is Buckingham's Vice President of Sales and he specializes in "LED lighting applications" with duties including developing relationships with

---

[1] Home Depot identified these witnesses under the "willing witness" category. *See* ECF No. 24 at 10. Because Home Depot has not otherwise shown this witness to be willing, the Court will evaluate the convenience of this witness under the compulsory-process factor. "[W]hen there is no indication that a non-party witness is willing, the witness is presumed to be unwilling." *In re Apple*, 581 F. App'x at 889; *see also In re Pandora Media, LLC*, No. 2021-172, 2021 U.S. App. LEXIS 30963, at *9 (Fed. Cir. Oct. 13, 2021).

"North American big box retailers for sales and new innovative products." ECF No. 24-17. And Home Depot has represented that Buckingham supplies it with Accused Products. These facts, taken together, suggest Mr. Ouellette may be able to offer testimony relevant to damages, willfulness, and product development.

In reply, Home Depot also informs the Court that one of the Home Depot employees it identified in its opening brief, Meghan Kramer, has since left Home Depot but continues to reside in the NDGA. ECF No. 50 at 4. As the Court explains below with respect to Home Depot's "merchant" employees, the Court finds that Ms. Kramer has relevant knowledge. *See infra* Section III.B.3. Yet, given her status as a former employee, the Court will treat Ms. Kramer as an unwilling witness whose testimony the NDGA, but not this District, can compel.

Lynk argues in sur-reply that the Court cannot consider Ms. Kramer under this factor because the private and public interest factors must be considered based on "the situation which existed when suit was instituted." ECF No. 52 at 1 (citing *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960)). The Court is aware the Federal Circuit has endorsed this position in non-precedential opinions. *See In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013); *In re Netscout Sys.*, No. 2021-173, 2021 U.S. App. LEXIS 30500, at \*12 (Fed. Cir. Oct. 13, 2021). But, in this Court's judgment, that overextends *Hoffman*. *Hoffman* interpreted the "where it might have been brought" language of § 1404(a). That phrase, which includes a past participle, is retrospective. *Hoffman* correctly held, then, that an action "might have been brought" only in a forum where venue, personal jurisdiction, and subject matter jurisdiction *were* appropriate when the plaintiff filed its complaint.

The "convenience" clause of § 1404(a) includes no comparable language mandating that courts look only backward. *Cf. Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 34 (1988) (Scalia,

J., dissenting) ("[T]he courts in applying § 1404(a) have examined a variety of factors, each of which pertains to facts that currently exist or will exist . . . ."); *Seagen Inc. v. Daiichi Sankyo Co.*, No. 2:20-CV-00337-JRG, 2021 U.S. Dist. LEXIS 156331, at *5 (E.D. Tex. Apr. 19, 2021) ("[W]hether to transfer a case for convenience bears primarily on post-complaint matters."). For its part, *Hoffman* did not purport to interpret the "convenience" clause of § 1404(a); convenience was not at issue in *Hoffman*. This Court will not hold, then, that merely because the inquiry as to where an action "might have been brought" is retrospective, so too must the convenience analysis.[2] Holding otherwise permits transfer to a forum that, at the time of transfer, is *inconvenient*—so long as it *was* convenient when the suit was filed. Transfer in such a scenario would not be "[f]or the convenience of parties and witnesses." § 1404(a). Accordingly, it is appropriate to consider Ms. Kramer under this factor.

*Lynk's Non-party Witnesses.* Lynk argues that there are at least three relevant, non-party witnesses subject to this Court's subpoena power. First, Ms. Raju, who allegedly prosecuted some of the asserted patents, is located in Dallas. ECF No. 45 at 10. Second, ▮▮▮▮▮▮▮ an early Lynk customer with knowledge relevant to secondary considerations of non-obviousness and damages, is located in San Antonio. *Id.* Third, Summer Wind, one of Home Depot's vendors, has an office in Grapevine, Texas. *Id.* at 11.

The Court treats Ms. Raju and ▮▮▮▮▮▮▮ as it did under the sources-of-proof factor: neither likely possess relevant evidence or knowledge. *See supra* Section III.B.I. Further, the Court is not satisfied that any Grapevine-based employees of Summer Wind have knowledge relevant to

---

[2] Which is not to say that a court must weigh relevant facts arising post-complaint if the court finds that they arose out of gamesmanship. *See In re Netscout*, 2021 U.S. App. LEXIS 30500, at *12-13 ("To the extent that post-motion events may ever be considered in a section 1404(a) analysis, we must guard against manipulative measures designed to defeat transfer to a more convenient venue.").

this dispute for at least two reasons. First, the parties dispute whether Summer Wind supplies any accused products. *Compare* ECF No. 52 at 2 *with* ECF No. 50 at 2. Second, and dispositive here, the Court is not convinced that—to the extent Summer Wind supplies any Accused Products—any production or development occurred in Grapevine. ████████████████████████ ██████████████████████████████████ according to the Summer Wind website Lynk provided, ECF No. 45 at 11, Summer Wind has one office in Taiwan, where it was seemingly founded, and another in China. Home Depot has represented that many of its vendors are located in Asia; the Court will not presume, then, that Home Depot interfaced with Summer Wind personnel in Grapevine in developing Accused Products instead of personnel in Asia.

Lynk has not identified any relevant witnesses whose testimony this Court could compel, whereas the NDGA can compel the testimony of at least Mr. Siglin, Mr. Ouellette, and Ms. Kramer. Accordingly, the Court finds that this factor favors transfer.

### 3. Cost of Attendance of Willing Witnesses

"The convenience of witnesses is the single most important factor in the transfer analysis." *Fintiv*, 2019 U.S. Dist. LEXIS 171102, at *17. The Fifth Circuit has established the "100-mile rule," providing that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05.

The Federal Circuit has held that, where witnesses would be required to travel a significant distance no matter where they testify, those witnesses will only be slightly more inconvenienced by having to travel to, for example, California, compared to Texas. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317); *In re Genentech*, 566 F.3d at 1344 (stating that the 100-mile rule should not be "rigidly" applied in the

context of foreign witnesses). It has opined elsewhere that "[t]he comparison between the transferor and transferee forum is not altered by the presence of other witnesses and documents in places outside both forums." *In re Toyota*, 747 F.3d at 1340; *In re Google*, 2021 U.S. App. LEXIS 29137, at *12 ("[W]hen there are numerous witnesses in the transferee venue and the only other witnesses are far outside the plaintiff's chosen forum, the witness-convenience factor favors transfer."). And, in yet other cases, it has considered only hypothetical travel-time statistics, and not distance, under this factor. *See, e.g.*, *In re Google LLC*, 2021 U.S. App. LEXIS 29137, at *12.

The Federal Circuit has recognized that "an employer's cooperation in allowing an employee to testify may diminish certain aspects of inconvenience to the employee witness (for instance, the employee is not acting contrary to their employer's wishes)." *In re Hulu,* No. 2021 U.S. App. LEXIS 22723, at *13. Elsewhere it has stated that inconvenience is not attenuated *at all* when the witnesses are employees of the party calling them. *See, e.g.*, *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1319 (Fed. Cir. 2021).

*Home Depot's Party Witnesses*. Home Depot identified eight Atlanta-based Home Depot employees, alleging each has relevant knowledge regarding the design, development, and sale of the Accused Products. ECF No. 24 at 9. Each one either holds or held the title of "Merchant." *Id.* Lynk questions how critical these witnesses are in view of Mr. Snyder's deposition testimony





The Court is satisfied that the eight witnesses Home Depot identified likely have relevant knowledge, though maybe not knowledge directed to every relevant technical aspect of the Accused Products. To be sure, knowledge of the design of internal circuitry of the Accused Products is critical here where the asserted claims are directed primarily to the arrangement of circuitry. *See, e.g.*, ECF No. 17 at 21, 22, 26, 33, 34, 41, 42, 49, 50, 57, 58, 66, 67, 73, 74, 79, 80, 89, 90. And knowledge of such circuitry may rest with Home Depot's vendors.[3] But the claims also recite features beyond internal circuitry. For example, the asserted claims recite features such

---



Most of these vendors are presumed to be unwilling witnesses since neither party has shown otherwise, and cannot be compelled to testify live in this District or the NDGA.

as: a "lens covering the lighting device," *id.* at 74; providing "light of a different level of brightness in response to adjustment of [a] first switch," *id.* at 67; circuits having "a forward voltage of 6V or greater," *id.* at 58; "wherein the LED lighting device is configured to connect to an AC voltage power source," *id.* at 50; an LED "configured to emit light of a different color temperature than at least one other LED," *id.* at 34. ████████████████████████████████ ████████████████████████████████ This knowledge is not "marginally relevant." ECF No. 45 at 2.

Nor is knowledge related to damages, induced infringement, or willful infringement, "marginally relevant." ████████████████████████████████

████████████████████████████████

████████████████████████████████

██████████████████████

Lynk also asserts that Home Depot willfully infringed and induced infringement. *See* ECF No. 17. These claims require proof of knowledge and intent. *See, e.g.*, *Motiva Patents, LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 828, 838 (E.D. Tex. 2019). Home Depot's merchants, responsible for developing and selling the Accused Products, can speak to these—even if they cannot speak to the process of designing the relevant circuitry. ████████████████████████████████

████████████████████████████████

████████████████████████████ To this point, Lynk's complaint explicitly references pre-suit licensing negotiations between Lynk's CEO and at least four of the merchants Home Depot has identified as having relevant knowledge (including Mr. Stein). ECF No. 17 ¶¶ 31–53; *see also* ECF No. 50 at 1. Lynk cannot posit that merchants it

invoked to establish its willfulness claims have knowledge that is only "marginally relevant" to willfulness.

The Court is also satisfied that there are likely Home Depot witnesses relevant to damages in this District. Because the Court found that Home Depot's BlackLocus Innovation Lab in this District maintains evidence relevant to damages, "there similarly is no reason to doubt that employees of" Home Depot at the BlackLocus Innovation Lab in this District "have relevant and material information." *In re Apple*, 2021 U.S. App. LEXIS 33788, at \*8.

With the exception of Ms. Kramer, discussed *supra*, Home Depot's identified merchants are willing witnesses likely possessing knowledge relevant to at least some claimed features, damages, induced infringement, and willful infringement. That these merchants are all concentrated in Atlanta weighs in favor of transfer. Home Depot employees at the BlackLocus Innovation Lab are insufficient to tip the scales back against transfer.

*Lynk's Party Witnesses.* Lynk's CEO resides in Chicago and, according to Home Depot, the travel time from Chicago to Atlanta is half that of Chicago to Waco. *Id.* at 10. Lynk responds that "[a]ll of Lynk's employees with relevant information and testimony are located in Illinois." ECF No. 45 at 6. According to Lynk, trial in this District is more convenient because Lynk has customers in Texas, but none in Atlanta, making travel to Waco more economical than travel to Atlanta. *Id.* The Court finds that, under the 100-mile rule, Atlanta is more convenient for Lynk personnel than Waco. To the extent that Lynk personnel may be able to piggyback in-person customer calls onto a trip to Waco to testify, that would only slightly diminish the relative convenience of Atlanta. But the Court finds Lynk's "economical" argument self-serving given that Lynk also has customers in Atlanta. *See* ECF No. 50 at 4.

18

*Non-party Witnesses.* Home Depot identifies Mr. Boyd as a potential non-party witness who would be inconvenienced by a Waco trial. ECF No. 11–12. Home Depot further asserts that the NDGA would be more convenient for Robert Kottritsch, Lynk's Vice President of Business Development and a named inventor on six asserted patents, because Atlanta is nearer Mr. Kottritsch's home in ███████████ ECF No. 45 at 6. Lynk clarified that it no longer employs Mr. Kottritsch, now retired, and Mr. Kottritsch has stated that, for personal reasons, he is willing to travel to Waco for trial, but not to the NDGA. *Id.*; ECF No. 45-2 ¶ 6.

Lynk also avers that ████████████████, as Lynk's long-time customer, has testimony relevant to damages, such as Lynk's status in the LED lighting industry and Home Depot's effect on Lynk's market presence, and to secondary considerations of non-obviousness. ECF No. 45 at 7. ███████ President and CEO has attested that he would be willing to travel from ██████ HQ in Reagan, Texas to Waco to testify, but not to Atlanta. ECF No. 45-4 ¶ 11.

The Court will evaluate the convenience of Mr. Boyd, Mr. Parma, and Mr. Kottritsch under this factor because each has expressed a willingness to travel for trial. ██████████████; ECF No. 45-2 ¶ 6; ECF No. 45-4 ¶ 11. The Court agrees with Home Depot that ████████ ██████████████████████████████████████████████████ ████████████████████ for him, trial in the NDGA would be more convenient.

The Court disagrees with Lynk that Mr. Parma possesses knowledge relevant to damages and non-obviousness. As Home Depot has noted, ████ has only purchased only one product from Lynk, a ████████████████████ that *no other Lynk* customer has purchased, has no apparent relevance to the Accused Products or patents-in-suit, is not identified on Lynk's list of products allegedly covered by the patents-in-suit." *Id.* at 1–2. Mr. Parma's declaration did not attest to any knowledge of Lynk's products covered by the asserted patents or that ████ has ever

considered buying such products. The Court cannot cognize, then, what unique testimony Mr. Parma could offer relevant to this case.

As to Mr. Kottritsch, given his status as a named inventor and former vice president at Lynk, he likely possesses relevant testimony. The Court will not hold, however, that, under the 100-mile rule, Waco is more convenient for Mr. Kottritsch than Atlanta. Mr. Kottritsch's unwillingness to testify in Atlanta for unidentified reasons does not disturb the fact that ▮▮▮▮▮ is nearer to Atlanta than Waco. In any event, Federal Circuit guidance accords his convenience little weight since he will have to travel a great distance no matter the forum. *See In re Genentech*, 566 F.3d at 1344.

Home Depot also avers that



*Conclusion*. The testimony of Home Depot's vendors may be central to the issue of infringement, but, with the exception of Mr. Boyd, their convenience is irrelevant to this factor. Home Depot personnel, like the eight Atlanta-based merchants (or former merchants), have knowledge relevant to at least some claimed features, damages, induced infringement, and willful infringement. Transfer would no doubt be more convenient for them. It would also be more convenient for Lynk's Illinois-based employees, given that Elgin, Illinois is nearer Atlanta than

Waco. The only willing witnesses for whom this District would be more convenient are witnesses from the BlackLocus Innovation Lab (and Lynk has not shown that the amount of knowledge they possess is particularly great). Because transfer would be more convenient for several relevant, willing witnesses, and inconvenient for only a few, this factor favors transfer.

4.    Practical Problems

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "[G]arden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer" but delay in already protracted litigation may account for some weight. *In re Radmax*, 720 F.3d at 289.

"Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). The interests of justice may be best served by transferring ancillary matters pending in other forums to the forum of the main action, particularly if the main action is complex. *Bank of Texas v. Computer Statistics, Inc.*, 60 F.R.D. 43, 45 (S.D. Tex. 1973). "[T]he ability to transfer a case to a district with numerous cases involving some overlapping issues weighs at least slightly in favor of such a transfer." *In re Apple*, 979 F.3d at 1344. But district courts should not rely "on considerations of judicial economy arising after the filing of the lawsuit or the transfer motion," such as, for example, suits filed in the transferor district after a request to transfer. *In re Netscout*, 2021 U.S. App. LEXIS 30500, at *12. Further, "the mere co-pendency of infringement suits in a particular district" does not automatically tip transfer in one direction or the other. *Id.* at *13.

This factor is neutral. This case has not matured to a stage where this factor would counsel against transfer. Lynk's only argument under this factor is that this Court's experience with

infringement suits involving LED lighting technology will "facilitate expeditious resolution and maximize judicial efficiency." ECF No. 45 at 13 (citing only *Satco Prods., Inc. v. Signify N. Am. Corp.*, 6:21-cv-00146-ADA (W.D. Tex.)). As far as the Court is aware, no other cases before it involve the same patents or the same Accused Products. General experience litigating disputes in one broad swathe of technology does not supply anywhere near the same measure of benefit. On the other hand, Home Depot argues that this factor favors transfer because this Action is "complicated" and thus would enjoy a "greater-than-typical benefit from being close to significant sources of proof." ECF No. 24 at 12. The Court declines Home Depot's request to double-count the sources-of-proof factor merely because this case is complex—most patent cases are. This factor is, therefore, neutral.

### C.    Public Interest Factors

#### 1.    Court Congestion

The relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved." *In re Genentech*, 566 F.3d at 1347; *In re Apple*, 979 F.3d at 1343. A faster average time to trial means more efficient and economical resolutions of the claims at issue. That said, "[a] court's general ability to set a fast-paced schedule is not particularly relevant to this factor." *In re Apple*, 979 F.3d at 1344. Moreover, when other relevant factors weigh in favor of transfer or are neutral, "then the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347.

The Federal Circuit has held that a difference in the number of pending cases between the transferor and transferee forums is "too tenuously related to any differences in speed by which these districts can bring cases to trial." *Id*. In another case, it has opined that a "proper" analysis "looks to the number of cases per judgeship and the actual average time to trial." *In re Juniper Networks, Inc.*, No. 2021-156, 2021 U.S. App. LEXIS 29812, at *8 (Fed. Cir. Oct. 4, 2021).

Home Depot asserts that the time-to-disposition is longer in this District than in the NDGA by less than a month. ECF No. 13 at 13. It also asserts that since there were 740 patent cases pending before this Court, and fewer than 10 patent cases pending before each NDGA judge, the NDGA is less congested than this Court. *Id.* Lynk responds, citing the most recent time-to-trial statistics showing that, on average, this Division is bringing cases to trial seven months faster than the NDGA. ECF No.45 at 14.

The Court finds that this factor weighs against transfer. Home Depot's comparison of the number of patent cases per judge is unhelpful. It should come as no surprise to either party that federal judges preside over more than just patent cases. Moreover, Home Depot cites time-to-disposition statistics, which have been disfavored relative to time-to-trial statistics. And the Court is satisfied that, based on those time-to-trial statistics Lynk has offered, this case "can come to trial and be resolved" sooner here than in the NDGA. *In re Genentech*, 566 F.3d at 1347; *In re Apple*, 979 F.3d at 1343. As such, this factor favors transfer.

The Federal Circuit has also held that, where the plaintiff is "not engaged in the manufacture or sale of products that practice the asserted patents," the court must "point to any reason that a more rapid disposition of the case that might be available in Texas is worthy of important weight." *In re Juniper Networks*, 14 F.4th at 1322; *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380–81 (Fed. Cir. 2021). Here, Home Depot's position is that "Lynk Labs is not a direct competitor of Home Depot or its vendors and operates primarily to monetize its intellectual property." ECF No. 24 at 13. Lynk has shown that it has customers, *see* ECF No. 45 at 6–7, but even if it had not, it would still be entitled to the swift vindication of its property rights. The Federal Circuit has long held that "[r]ecognition must be given to the strong public policy favoring expeditious resolution of litigation." *Kahn v. GMC*, 889 F.2d 1078, 1080 (Fed. Cir. 1989). And

PUBLIC VERSION

Congress itself has acknowledged the importance of the "quick" and inexpensive resolution of patent disputes, going so far as to erect a sprawling administrative regime—that does not differentiate between worked and unworked patents—for that purpose. *See, e.g.*, *Ethicon Endo-Surgery, Inc. v. Covidien LP*, 826 F.3d 1366, 1367 (Fed. Cir. 2016). Consistent with such expressions of public policy, the public has an interest in the rapid resolution of patent disputes (without reference to whether the patent is current being worked).

### 2. Local Interests

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent case "are not a fiction." *In re Samsung*, 2 F.4th at 1380. "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original). That is, courts should not heavily weigh a party's general contacts with a forum untethered from the lawsuit, such as a general presence. *Id.* Where the movant has a "significant presence" in the transferor forum, this factor "heavily" favors transfer where the transferee forum has a "significant connection to the event that gave rise to [the] suit." *In re Apple*, 2021 U.S. App. LEXIS 33788, at *14–15. Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in

the district for purposes of litigation." *In re Juniper Networks*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)).

Home Depot argues that the NDGA has a strong general interest in this litigation given Home Depot's Atlanta HQ. ECF No. 24 at 14. It also asserts that, because design and development of the Accused Products took place in the NDGA, events giving rise to the suit occurred in the NDGA. *Id.* Lynk responds that this District has a local interest because: (1) Lynk has relationships with customers here; (2) infringing products are sold in this District; and (3) Home Depot maintains a significant presence in this district—to the tune of 10,000 employees and several facilities. ECF No. 45 at 15.

The Court finds that this factor favors transfer. It is indisputable that Home Depot has a significant presence in this District; it purportedly employs ▮▮▮▮ residents and operates offices and storefronts throughout. Yet Home Depot has an even large presence in the NDGA, where it has rooted its HQ and allegedly employs ▮▮▮▮ residents.

The Federal Circuit has repeatedly admonished courts to move beyond these general ties and focus on "significant connections between a particular venue and the events that gave rise to a suit." *In re Apple Inc.*, 979 F.3d at 1345. Home Depot provided evidence that at least some portion of the development cycle for the Accused Products occurred in the NDGA. There is no comparable evidence binding this Action to this District. And while it may be true that development and design of the features captured by the asserted patents' claims occurred at vendor locations elsewhere in the United States and Asia, the Court is nevertheless satisfied that at least *some* significant events giving rise to this Action occurred in the NDGA.

Lynk tries to tie this Action to this District by noting the presence of its customers in this district. Yet Lynk does not explain why these customers were "actually affected—directly and

PUBLIC VERSION

indirectly—by the controversies and events giving rise to [this] case." *Volkswagen II*, 545 F.3d at 318. Lynk has not shown that ███ and █████████ g purchased products practicing the asserted patents. It is unclear, then, what "stake" these customers have "in the resolution of this controversy." *Id.* In a similar vein, Lynk also relies on the fact that infringing goods are sold in this District. This argument is unavailing because "the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009).

Balancing these interests, the Court finds that this factor favors transfer.

3.   <u>Familiarity of the Forum with Law-At-Issue</u>

The parties do not dispute that this factor is neutral and the Court agrees.

4.   <u>Conflict of Laws</u>

The parties do not dispute that this factor is neutral and the Court agrees.

## IV. CONCLUSION

Having considered the private and public interest factors, Court's conclusions for each factor is summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Relative ease of access to sources of proof | Weighs in favor of transfer |
| Availability of compulsory process to secure the attendance of witnesses | Weighs in favor of transfer |
| Cost of attendance for willing witnesses | Weighs in favor of transfer |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Neutral |
| Administrative difficulties flowing from court congestion | Weighs against transfer |
| Local interest | Weighs in favor of transfer |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

Three factors are neutral, only court congestion weighs against transfer, and the sources-of-proof, compulsory-process, willing-witnesses, and local-interests factors all favor transfer. Given the foregoing, the Court finds that Home Depot has shown that NDGA is clearly more convenient than this District. Home Depot's Motion is therefore **GRANTED**. The Court **ORDERS** that the above captioned case is transferred to NDGA.

SIGNED this 8th day of December, 2021.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE